UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHAWNTELE CORTEZ JACKSON,                                                       Petitioner,

v.                                                        Civil Action No. 3:16-cv-91-DJH-DW

WARDEN KATHY LITTERAL,                                                         Respondent.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Shawntele Cortez Jackson has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging various constitutional violations. (Docket No. 1) Respondent Kathy Litteral opposes Jackson's petition. (D.N. 15) The Court referred this matter to Magistrate Judge Dave Whalin, who issued a report and recommendation on May 24, 2017. (D.N. 29) Judge Whalin recommended that the Court deny Jackson's petition. (*Id.*, PageID # 824) He also concluded that Jackson was not entitled to a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(1)(B). (*Id.*, PageID # 823–24) After the Court granted Jackson additional time (D.N. 33), he filed objections to Judge Whalin's report on July 14, 2017. (D.N. 34) For the reasons set forth below, Jackson's objections will be overruled. After careful consideration, the Court will adopt in full Judge Whalin's Findings of Fact, Conclusions of Law, and Recommendation.

**I.**

In 2007, Jackson was convicted by a jury in Jefferson County, Kentucky, of the murder of Richard Lee Washington. (*See* D.N. 15-16) The conviction follows from events that occurred in Louisville, Kentucky, on May 16, 2006. That evening, Jackson, D'Angelo Scott, Dora Ditto, and Ditto's boyfriend, Richard Lee Washington, drove together to a convenience store to collect money from an individual indebted to Jackson. *See Jackson v. Commonwealth* (*Jackson I*), No.

1

2007-SC-000392-MR, 2010 WL 252244, at *1 (Ky. Jan. 21, 2010). While at the convenience store, Jackson and Washington began arguing and continued to do so as the group reached the apartment of Jackson's girlfriend, Dominique Rudolph. *Id.*

According to Jackson, upon exiting the vehicle, Ditto removed a black handgun from the trunk and handed it to Washington. *Id.* Washington then approached Jackson and threatened to kill him. *Id.* Shoving ensued, and eventually the two men struggled for possession of the handgun. *Id.* Jackson claims that during the entanglement, the gun fired while in Washington's right hand and struck Washington in the back of the head. *Id.*

Ditto's version of events differs markedly. Ditto explained that upon exiting the vehicle, Jackson asked Washington for another ride, which Washington refused. *Id*. at *2. Jackson then hit Washington in the head with a handgun and told him he "ought to kill him." *Id.* Ditto asserted that Jackson proceeded to strike Washington again with the gun, causing it to fire and kill Washington. *Id.* Scott testified similarly, with one notable exception. He testified that although he heard the gun fire, he did not recall seeing either man with a firearm earlier that night. *Id.*

There are likewise differing versions as to the subsequent events. According to Jackson, he ran to his girlfriend Rudolph's apartment immediately after the altercation. *Id.* Jackson asserts that he fell asleep there and did not wake or leave the apartment for thirty-six hours. *Id.* Ditto, on the other hand, stated that Jackson immediately ran from the scene with the gun still in his possession. *Id.* Scott testified that he too went to Rudolph's apartment following the altercation but that Jackson arrived there sometime later in the night. *Id.* At trial, the state also presented the testimony of Amber Baker, Jackson's ex-girlfriend. *See Jackson I*, 2010 WL 252244, at *2. Baker testified that Jackson arrived at her apartment on the night in question

looking scared and watching out her screen door. Baker stated that Jackson continued doing so for twenty minutes before leaving. *Id*.

Following Jackson's arrest and indictment by a grand jury, a jury found Jackson guilty of murdering Washington under Ky. Rev. Stat. § 507.020. (*See* D.N. 15-16) Jackson timely appealed his conviction, raising ten allegations of error on appeal. (*See* D.N. 15-4) In an opinion issued January 21, 2010, the Supreme Court of Kentucky affirmed Jackson's conviction. *Jackson I*, 2010 WL 252244, at *13.

Jackson then filed a *pro se* collateral attack pursuant to Kentucky Rule of Criminal Procedure 11.42 in the Jefferson Circuit Court, asserting seven claims of ineffective assistance of counsel and a claim of cumulative error. (D.N. 15-8; D.N. 15-9) When Jackson's appointed counsel declined to supplement Jackson's motion, Jackson filed a supplemental *pro se* motion pursuant to Rule 11.42. There, Jackson raised three additional grounds of ineffective assistance of counsel. (*See* 15-1, PageID # 137) The Jefferson Circuit Court held an evidentiary hearing and ultimately dismissed Jackson's claims. (D.N. 15-8, PageID # 387–97) Jackson appealed five of his claims to the Kentucky Court of Appeals, which affirmed the state trial court's decision. *See Jackson v. Commonwealth* (*Jackson II*), No. 2013-CA-001727-MR, 2015 WL 1648058 (Ky. Ct. App. Apr. 10, 2015). Thereafter, the Kentucky Supreme Court denied Jackson's request for discretionary review. (*See* D.N. 15-10, PageID # 461)

Jackson has now filed a petition for habeas corpus relief in this Court, raising the ten claims from his direct appeal, the five claims of ineffective assistance of counsel from his Rule 11.42 motion, and a claim of cumulative error. (*See* D.N. 1) On May 24, 2017, Magistrate Judge Dave Whalin issued his report and recommendation. (D.N. 29). Jackson timely filed objections to Judge Whalin's findings. (D.N. 34) Judge Whalin based his conclusion on sixteen

separate findings (Grounds 1–16). Jackson objects to all but grounds five, fifteen, and sixteen. (*Id*.) Accordingly, the Court's review will be limited to grounds one through four and six through fourteen. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (finding that if a party fails to object, the Court need not "review a magistrate's factual or legal conclusions, under a de novo or any other standard.")

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides relief to a habeas petitioner if the underlying state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). This clause applies "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). If fair-minded jurists could disagree as to the correctness of the state court's decision, then Jackson will not be entitled to relief. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The AEDPA also provides relief if the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This occurs when "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under this clause, Jackson must show that "the state court applied [a Supreme Court case] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

4

When reviewing a report and recommendation, this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which an objection is not made. *See Thomas*, 474 U.S. at 150. On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Whalin's recommendation to which Jackson objects to determine if relief is warranted under the AEDPA.

### III.

**a. Jackson's Claims from Direct Appeal**

<u>1. Failure to Instruct on Self-Protection (Ground One)</u>

Three of Jackson's claims concern trial errors and the issue of whether the Kentucky Supreme Court was correct to conclude that such errors were "harmless." A habeas petitioner is not entitled to relief based on trial error unless he can establish that it resulted in "actual prejudice." *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). The Court agrees with the Kentucky Supreme Court and Judge Whalin that Jackson has not met this standard.

At issue in ground one of Jackson's petition is the trial court's failure to instruct the jury on a self-protection defense for the lesser-included offenses of second-degree manslaughter and reckless homicide. (D.N. 1-1, PageID # 49) The Kentucky Supreme Court found that the trial court abused its discretion in failing to so instruct. *Jackson I*, 2010 WL 252244, at *9. The court held, however, that the error was harmless, given the fact that the jury chose to convict Jackson under the correctly phrased instruction of murder—a charge that placed an additional burden on the state to disprove Jackson's claim of self-protection. *Id.* at *10.

In his report and recommendation, Judge Whalin agreed, concluding that Jackson could not prove that the failure to instruct the jury on self-protection prejudiced him. (D.N. 29, PageID # 797) Jackson objects to this conclusion, arguing that the failure effectively denied him from utilizing the self-protection defense against the lesser-included charges. (D.N. 34, PageID # 837–38) Even if this is true, however, this goes to show only that the trial court erred. In his objection, Jackson again fails to show that the error was prejudicial, given that he was ultimately convicted under a correctly worded charge. Accordingly, Jackson has failed to meet his burden under *Brecht*, and the Court will adopt Judge Whalin's conclusion as to ground one.

2. Limited Impeachment of Prosecution Witness (Ground Three)

At issue in ground three of Jackson's petition is the trial court's limiting of his counsel's impeachment of Amber Baker, Jackson's ex-girlfriend, who provided testimony adverse to him. (D.N. 1-1, PageID # 54) At trial, the court limited defense counsel's questions regarding a prior and allegedly inconsistent statement Baker had given to investigator Joy Aldrich. The Kentucky Supreme Court found that while the trial court erred in this limitation, the error was harmless because Baker's testimony was later called into question anyway when defense counsel questioned Detective Cohen concerning statements that were substantially similar to the statements Baker allegedly made to Aldrich. *Jackson I*, 2010 WL 252244, at *8.

In his report and recommendation, Judge Whalin agreed with the Kentucky Supreme Court, adding that Jackson's counsel was otherwise granted significant latitude during cross-examination besides the limitation at issue. (D.N. 29, PageID # 799–800) Judge Whalin concluded that under the applicable standard, Baker had not shown that the trial court's error had a "substantial and injurious effect" on Jackson's case and thus it was "harmless" for purposes of

6

his habeas petition. (*Id.*, PageID # 800 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680–81 (1986)))

In his objection, Jackson again contends that the limitation violated his rights under the Confrontation Clause. (D.N. 34, PageID # 839–42) As in his objection to ground one, however, Jackson cites various Supreme Court cases interspersed with conclusory legal statements regarding his case. (*Id.*) Jackson does not directly address how the trial court's error was "substantial and injurious," besides stating the obvious that Baker's testimony was harmful to Jackson's overall defense. The fact that Baker ultimately gave adverse testimony does not render the trial court's error "substantial and injurious," however—especially when the testimony differed only slightly from the alleged inconsistent statement given to the investigator. (*See* D.N. 29, PageID # 799 (citing *Van Arsdall*, 475 U.S. at 680)) Accordingly, the magistrate judge correctly concluded that Jackson does not state a viable claim in ground three of his petition.

### 3. Inadmissible Reference to Possession of Handgun (Ground Seven)

At issue in ground seven is the trial court's admission of testimony regarding Jackson's possession of a small, silver handgun. Jackson claims that he was prejudiced by this testimony because the statements from Ditto and Scott indicated that a black handgun was used in the shooting of Washington. (D.N. 1-1, PageID # 63) The Kentucky Supreme Court agreed with Jackson that the testimony had a prejudicial effect that was not outweighed by its probative value, but ultimately concluded that the error was harmless since it did not have a "substantial influence" on the trial given the independent evidence that indicated Jackson's guilt. *Jackson I*, 2010 WL 252244, at *6 (citing *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky. 2009)). Such evidence included the fact that:

> Jackson phoned Baker from prison and warned her not to tell investigators that he was known for having a gun, the fact that neither Washington nor Jackson had defensive wounds, that Jackson fled from the scene of the crime, that no murder weapon was recovered, that Jackson attempted to dispose of his clothes, and that Ditto saw Jackson threaten and intentionally strike an unarmed Washington with a loaded handgun.

(D.N. 29, PageID # 801)  In his report and recommendation, Judge Whalin first noted that "[a]dmission of bad-acts evidence constitutes harmless error if the other record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error."  (D.N. 29, PageID # 802 (citing *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011) (internal quotations omitted)))  Accordingly, Judge Whalin agreed with the Kentucky Supreme Court that the trial court's admission of the testimony at issue was harmless, given the testimony's brevity and the additional, overwhelming evidence that indicated Jackson's guilt.  (*Id.*, PageID # 803)

In his objection, Jackson does not directly counter the magistrate judge's conclusion. Indeed, Jackson begins by recognizing that he undertakes a "daunting task" in seeking habeas relief under this ground.  He then proceeds to blame his failure to satisfy his burden on the "facist AEDPA" and "[u]n[A]merican legal principles."  (D.N. 34, PageID # 843)  Jackson has not demonstrated how the trial court's error was harmful.  The Court thus finds that the magistrate judge was correct in his conclusion that ground seven fails to state a viable claim.

<u>4. Admissibility of Testimony Regarding the Position of Victim's Body (Ground Two)</u>

At issue in ground two is the trial court's admission of testimony from two police officers called to the scene of the crime.  At trial, the officers testified as to the position of Washington's body, concluding that the position was inconsistent with a fight or a struggle.  (*See* D.N. 29, PageID # 803)  The Kentucky Supreme Court held that the trial court properly admitted the

8

officers' testimony as lay opinions under Kentucky Rule of Evidence 701. *Jackson I*, 2010 WL 252244, at *5.

In his petition, Jackson argues that because the jury had access to high-quality photographs of Washington's body at the crime scene, the officers' testimony was cumulative and the trial court erred in admitting it. (D.N. 1-1, PageID # 50–54 (citing *Allen v. United States*, 479 U.S. 1077 (1987))) Jackson also argues that the Kentucky Supreme Court based its decision on an unreasonable determination of the facts in light of the evidence presented. (*Id.*)

In his report and recommendation, Judge Whalin noted that Jackson's reliance on *Allen* was misplaced, given the fact that in *Allen* the Supreme Court vacated the lower court's judgment on grounds not involving lay-witness testimony. (D.N. 29, PageID # 805) Accordingly, Jackson pointed to no "clearly established federal law" to support his argument. (*Id.* (citing *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005))) As to Jackson's second argument, Judge Whalin concluded that the Kentucky Supreme Court could not have unreasonably determined facts as to this issue because the issue involved a straightforward application of law (i.e., Ky. R. Ev. 701) not of fact. (*Id.*)

In objection, Jackson merely parrots his previous arguments. (D.N. 34, PageID # 844–46) The Court need not consider an objection that simply restates the arguments set forth in a habeas petition. *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) (observing that "[a]n objection that does nothing more than state a disagreement with a [magistrate judge's] suggested resolution, or simply summarizes what has been presented before, is not an objection" within the meaning of 28 U.S.C. § 636(b)(1)). The only new argument Jackson presents is a citation to *Remmer v. United States*, 347 U.S. 227 (1954). (D.N. 34, PageID # 845) In *Remmer*, however, the petitioner complained that an unnamed person had remarked to a juror during the

9

petitioner's trial that the juror could profit by bringing in a verdict favorable to petitioner. 347 U.S. at 228. The issue of how a bribe purportedly from a defendant in a jury trial would affect a juror's determination of the case is far from the issue presented here. There is simply no evidence that the allegedly cumulative testimony improperly swayed the jury's thoughts. Accordingly, the Court will adopt the magistrate judge's conclusion as to ground two.

### 5. Initial Aggressor—Provocation Instruction (Ground Four)

At issue in ground four is the trial court's inclusion of a provocation qualification in the jury instruction on self-defense. The Kentucky Supreme Court concluded that the instruction was proper because the evidence indicated that Jackson may have intentionally provoked Washington on the night of the murder. (*See* D.N. 29, PageID # 806) In his petition, Jackson argues that this result is contrary to *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). (D.N. 1-1, PageID # 58–60) Jackson also contends that the provocation instruction stemmed from an unreasonable determination of the facts. (*Id.*)

First, as the magistrate judge noted, "*Estelle* has no holding that undermines the Kentucky Supreme Court's decision." (D.N. 29, PageID # 806) Indeed, *Estelle* states that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. at 63. Second, as to Jackson's factual challenge, the magistrate judge concluded that the propriety of the provocation instruction was not an unreasonable determination. Specifically, the magistrate judge noted that "[t]he testimony at trial created an issue of fact as to whether Jackson intentionally provoked Washington." (D.N. 29, PageID # 807)

In his objection, Jackson cites several Supreme Court cases to argue that the state court's decision is contrary to established federal law. (D.N. 34, PageID # 847 (citing *Fiore v. White*,

531 U.S. 225 (2001); *Patterson v. New York*, 432 U.S. 197 (1977); *In Re Winship*, 397 U.S. 358 (1970))) Each case, however, is wholly inapplicable to Jackson's claim. First, *Fiore* fails to even mention the term "jury," "provocation," or "instruction." *See* 531 U.S. 225. In *Patterson*, the Supreme Court held that due process is not violated by placing on a defendant the burden of proving by a preponderance of the evidence any proffered affirmative defenses. 432 U.S. at 206–07. If anything, then, *Patterson* actually hurts Jackson's argument. *Winship* is also inapplicable here. There, the Supreme Court held that the reasonable-doubt standard applies to juvenile defendants. 432 U.S. at 368. Jackson was not a juvenile at the time of his conviction, so it is unclear how *Winship* applies to this case. In sum, Jackson has failed to indicate clearly established federal law supporting his claim. The Court will accordingly adopt Judge Whalin's conclusions as to ground four.

### 7. Exclusion of Photographic Evidence (Ground Six)

At issue in ground six is the trial court's exclusion of photographic evidence demonstrating bruising to Jackson's wrist. During trial, Jackson sought to introduce a "mug shot," which allegedly showed redness along his wrists and supported his claim that Washington held him by the wrists during their struggle. (*See* D.N. 29, PageID # 809) The trial court concluded that the mug shot was inadmissible due to its poor quality. (*Id.*) The Kentucky Supreme Court affirmed, explaining that the poor quality created a serious danger of misleading the jury. *Jackson I*, 2010 WL 252244, at *9.

As explained in the report and recommendation, Jackson's only basis for challenging the court's ruling on this issue is a wholly inapplicable Supreme Court case. (*See* D.N. 1-1, PageID # 62–63 (citing *California v. Trombetta*, 467 U.S. 479 (1984))) In his objection, Jackson

11

presents no new arguments.  (*See* D.N. 34, PageID # 848–49)  Accordingly, the Court will adopt the magistrate judge's conclusion as to ground six.  *See VanDiver*, 304 F. Supp. 2d at 937.

### 8. Inadmissible Evidence in Jury Deliberations (Grounds Eight and Fourteen)

At issue in grounds eight and fourteen is Jackson's claim that he was denied due process because the jury allegedly considered during deliberations audio recordings from a crime-scene video that the trial court had excluded from evidence.  (*See* D.N. 15-4, PageID # 236–37)  As Judge Whalin explained, however, Jackson procedurally defaulted on this claim.  (*See* D.N. 29, PageID # 810)  Thus, Jackson must show cause for the default and resulting prejudice for the Court to consider the claim for habeas relief.  (*Id.*, PageID # 811 (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)))

To excuse the default, Jackson argues that the error was properly preserved due to ineffective assistance of counsel.  (D.N. 1-1, PageID # 67–68)  To establish ineffective assistance of counsel, Jackson must show deficient performance and resulting prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 688, 690.  The prejudice inquiry compels Jackson "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Judge Whalin concluded that Jackson had not shown prejudice, given that Jackson put forth no evidence that an "extraneous influence on a juror denied him a fair trial."  (D.N. 29, PageID # 813)  The magistrate judge also noted that Jackson had produced no evidence that the jury even viewed the video at issue.  (*Id.*)

In his objection, Jackson largely presents his previous arguments, including caselaw that the magistrate judge correctly distinguished from the case at hand. (D.N. 34, PageID # 850 (citing *Remmer v. United States*, 347 U.S. 227 (1954))) Jackson also maintains that the state court misapplied *Strickland* in reaching its conclusion. (*Id.*) But Jackson has misinterpreted his burden. He failed to show that the recordings, even if listened to by the jury, altered the outcome of his trial. *See Strickland*, 466 U.S. at 694. Accordingly, the Court will adopt the magistrate judge's findings as to grounds eight and fourteen.

### 9. Failure to Strike Juror for Cause (Ground Nine)

At issue in ground nine is the trial court's denial of Jackson's motion to strike a prospective juror for cause. During voir dire, the juror at issue made three statements that, according to Jackson, demonstrated the juror's inability to presume Jackson's innocence. Specifically, the juror alluded slightly to the belief that a defendant's possession of a gun or illegal drugs makes it more likely that a defendant committed other crimes. *See Jackson I*, 2010 WL 252244, at *3. The Supreme Court of Kentucky concluded that the trial court acted appropriately in not striking the juror, reasoning that the challenged responses were largely the result of leading hypothetical questions posed by defense counsel and that none of the statements actually revealed an inability to be impartial. *Id.*

Judge Whalin agreed with this analysis, noting that "[n]othing in Juror #24's testimony indicated that he would reject Jackson's presumption of innocence." (*See* D.N. 29, PageID # 816) The juror never explicitly stated that possession of a gun or illegal drugs makes it more likely that an individual has committed other crimes. Indeed, at most the record reflects a series of head nods and inaudible statements in response to defense counsel's leading questions. *See Jackson I*, 2010 WL 252244, at *3 ("Juror #24 nodded his head in agreement with defense

counsel's statement that someone carrying a concealed handgun without a permit would be more likely to commit a crime.")

Jackson objects to the magistrate judge's findings, accusing him of "blindly accept[ing] the determination of [the] trial court." (D.N. 34, PageID # 852) But this criticism is misplaced. As Judge Whalin explained, "[t]he resolution of the question of a juror's bias is a finding of fact which is entitled to a 'presumption of correctness' under 28 U.S.C. § 2254(d) and 'may only be overturned where manifest error is shown.'" (D.N. 29, PageID # 816 (quoting *Holder v. Palmer*, 558 F.3d 328, 339 (6th Cir. 2009))) Judge Whalin concluded that Jackson had not shown that the trial court manifestly erred in not striking the juror. (*Id.*) Jackson does nothing to refute this conclusion, and therefore the Court will adopt Judge Whalin's conclusion as to ground nine.

### 10. Refusal to Instruct on "No Duty to Retreat" (Ground Ten)

At issue in ground ten is Jackson's claim that the trial court's refusal to instruct the jury on "no duty to retreat" was reversible error. (D.N. 1-1, PageID # 77) The Kentucky Supreme Court held that the trial court did not err in so refusing in light of the court's decision in *Hilbert v. Commonwealth*, 162 S.W.3d 921 (Ky. 2005), which was controlling at the time of Jackson's trial. *See Jackson I*, 2010 WL252244, at *12. In *Hilbert*, the Kentucky Supreme Court held that "when the trial court adequately instructs on self-defense, it need not also give a no duty to retreat instruction." 162 S.W.3d at 926.

In his recommendation, the magistrate judge similarly concluded that the caselaw was against Jackson on this issue. (D.N. 29, PageID # 817) Jackson's objection to this conclusion consists of reiterated previous arguments and conclusory legal statements. Again, the Court need not consider an objection that merely restates the arguments set forth in a habeas petition.

14

*VanDiver*, 304 F. Supp. 2d at 937. Accordingly, the Court will adopt the magistrate judge's conclusion as to ground ten.

**b. Jackson's Rule 11.42 Claims—Ineffective Assistance of Counsel**

<u>1. Failure to Move for a Special Verdict Form (Ground Eleven)</u>

At issue in ground eleven is Jackson's allegation that his trial counsel performed deficiently by failing to move for a separate verdict form, which would have required the jury to specify whether it was finding Jackson guilty of intentional or wanton murder. (D.N. 1-1, PageID # 79–83) Again, to establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland*, 466 U.S. at 687.

Judge Whalin concluded that Jackson failed to establish that the result of his trial would have been different had trial counsel objected to this combination jury instruction. (*See* D.N. 29, PageID # 818 (citing *Strickland*, 466 U.S. at 687)) In his objection, Jackson again primarily reasserts previous arguments, including his citation to *Schad v. Arizona*, 501 U.S. 624 (1991), which the magistrate judge distinguished in his report and recommendation. (*See* D.N. 34, PageID # 854–55) Jackson fails to show how a separate verdict form would have changed the outcome of his trial. Because Jackson has not satisfied *Strickland*'s prejudice prong, the Court will adopt the magistrate judge's conclusions as to ground eleven.

<u>2. Failure to Advise Jackson of the Law of Self-Defense (Ground Twelve)</u>

At issue in ground twelve is Jackson's allegation that his trial counsel was ineffective by coercing him into testifying and by misadvising him as to the law of self-defense. (D.N. 1-1, PageID # 83–86) Specifically, Jackson argues that his trial counsel was deficient when she incorrectly advised him that Kentucky's codification of the "no duty to retreat" doctrine (SB 38)

15

would apply to his trial and thus support a no duty to retreat jury instruction. *Id*. He thus claims that this incorrect advice tricked him into testifying at trial.

The Kentucky Court of Appeals concluded that Jackson failed to establish that his trial counsel was deficient in this regard. *Jackson II*, 2015 WL 1648058, at *5. That court found that "[i]t was not unreasonable for trial counsel, in light of SB 38, to seek a no duty to retreat instruction." *Id*. The court therefore held that trial counsel's performance was not deficient and as such *Strickland*'s performance prong was not satisfied. *Id*.

In his habeas petition, Jackson argues that but for his trial counsel's poor advice regarding the applicability of SB 38, there is a reasonable probability that he would not have testified. (D.N. 1-1, PageID # 83–86) In his report and recommendation, Judge Whalin concluded, however, that Jackson could not establish either prong of *Strickland*. Specifically, Judge Whalin concluded that "tendering a 'no duty to retreat' instruction was reasonable in light of the uncertain applicability of SB 38." (D.N. 29, PageID # 819) Moreover, the magistrate judge concluded that regardless of whether Jackson's counsel's performance was deficient, Jackson had not established *Strickland*'s prejudice prong. (*Id*., PageID # 820)

In his objection, Jackson attacks the magistrate judge's conclusion as to prong one of *Strickland*. (D.N. 34, PageID # 855–57) Yet as stated, the magistrate judge also concluded that regardless of deficient performance by Jackson's trial counsel, Jackson had failed to establish that the deficiencies prejudiced his defense. Jackson's only retort to this finding is that "[i]n light of the particular facts of this issue, prejudice must be presumed." (*Id*., PageID # 857) Jackson has misstated his burden, however, and the Court need not "presume" prejudice where the petitioner has not adequately shown such prejudice. *Strickland* held that prejudice is presumed in limited circumstances only (i.e., denial of the assistance of counsel altogether or

16

when counsel is burdened by an actual conflict of interest). *Strickland*, 466 U.S. at 692. Neither of these situations is applicable here. The Court therefore agrees with the magistrate judge that "Jackson fails to identify how not taking the stand at trial and not testifying to a theory of self-defense would have changed the outcome of his case." (D.N. 29, PageID # 820)

### 3. Failure to Present Mitigation Witnesses (Ground Thirteen)

Finally, at issue in ground thirteen is Jackson's allegation that his trial counsel rendered ineffective assistance by failing to call any mitigation witnesses during the sentencing phase of his trial. (D.N. 1-1, PageID # 86–89) In his report and recommendation, Judge Whalin concluded that "[a]fter reviewing the record, the evidence demonstrates that trial counsel attempted to contact mitigation witnesses for Jackson's case but was not able to get into contact with them." (D.N. 29, PageID # 821) Accordingly, the magistrate judge concluded that Jackson had failed to satisfy *Strickland*'s performance inquiry. (*Id.*) *See also Williams v. Lafler*, 494 F. App'x 526, 531 (6th Cir. 2012) (finding that a lawyer's diligent effort to locate favorable witnesses was "reasonable" under *Strickland*).

In objection, Jackson again reasserts his previous arguments. As stated, the Court need not consider an objection that merely restates the arguments set forth in a habeas petition. *See VanDiver*, 304 F. Supp. 2d at 937. Accordingly, the Court will adopt Judge Whalin's conclusion as to ground thirteen.

### IV.

After de novo review of the substance behind Jackson's objections to Judge Whalin's Findings of Fact, Conclusions of Law, and Recommendation, the Court concludes that the Findings of Fact, Conclusions of Law, and Recommendation are correct. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The Findings of Fact, Conclusions of Law, and Recommendation of the magistrate judge (D.N. 29) are **ADOPTED** in full and **INCORPORATED** by reference herein.

(2) Jackson's objections to the Findings of Fact, Conclusions of Law, and Recommendation (D.N. 34) are **OVERRULED**.

(3) A separate judgment will be issued this date.

November 6, 2017

**David J. Hale, Judge**
**United States District Court**